IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

REGINALD K. PINK                    §
(TDCJ No. 1938997),                 §
                                    §
            Petitioner,             §
                                    §
V.                                  §            No. 3:16-cv-3461-L-BN
                                    §
LORIE DAVIS, Director               §            (Consolidated with:
Texas Department of Criminal Justice, §          No. 3:16-cv-3462-L-BF;
Correctional Institutions Division,  §           No. 3:16-cv-3463-L-BH; and
                                    §            No. 3:16-cv-3464-L-BH)
            Respondent.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Reginald K. Pink, a Texas prisoner, filed four *pro se* applications for

writ of habeas corpus under 28 U.S.C. § 2254 – one for each state habeas application

he filed. All Section 2254 petitions were consolidated into this action, *see* Dkt. No. 5

(citing FED. R. CIV. P. 42(a); N.D. TEX. L. CIV. R. 42.1), which the Court referred to the

undersigned United States magistrate judge for pretrial management under 28 U.S.C.

§ 636(b) and a standing order of reference. The State filed a response opposing relief.

*See* Dkt. No. 10. And Pink filed, among other things, pleadings that should be

construed as a reply brief. *See* Dkt. Nos. 16 & 17.

For the reasons explained below, the Court should deny Pink's requests for

federal habeas relief.

**Applicable Background**

Pink stands convicted of robbery, two aggravated robberies with a deadly

weapon, and aggravated assault on a public servant. *See State v. Pink*, Nos. F09-55346-T, F13-60732-T, F13-60733-T, & F13-72123-T (283d Jud. Dist. Ct., Dallas Cnty., Tex.); Dkt. No. 10-1, Ex. A. "The trial court assessed punishment, enhanced by two prior felony convictions, at life imprisonment in each case. On appeal, [Pink's] attorney filed a brief in which he conclude[d] the appeals [were] wholly frivolous and without merit." *Pink v. State*, Nos. 05-14-00877-CR, 05-14-00878-CR, 05-14-00879-CR, & 05-14-00880-CR, 2015 WL 3381180, at *1 (Tex. App. – Dallas May 26, 2015, pet. ref'd). After reviewing "the record, counsel's brief, and [Pink's] pro se motions" – one of which is at the root of his request for habeas relief – the Dallas Court of Appeals agreed that the appeals were "frivolous and without merit," finding "nothing in the record that might arguably support the appeals." *Id.* (affirming judgments and judgments as modified).

The Texas Court of Criminal Appeals ("CCA") refused Pink's petitions for discretionary review, *see Pink v. State*, PD-0776-15, -0777-15, -0778-15, & -0779-15 (Tex. Crim. App. Oct. 28, 2015), and denied his four state habeas applications without written order, *see Ex parte Pink*, WR-85,3528-01, -02, -03, & -04 (Tex. Crim. App. Aug. 17, 2016); Dkt. No. 10-1, Ex. B.

Through his timely-filed federal habeas petitions, Pink raises some six grounds, all concerning his direct appeal. He asserts that the State denied his right to appeal by (1) relying on an incomplete record and a defective *Anders* brief; (2) failing to grant him an evidentiary hearing on the completeness of the record on appeal; (3) denying him a further extension of time to file a *pro se* appellate brief; and (4) not supplying him a complete appellate record. And he asserts that his counsel on direct appeal

-2-

provided ineffective assistance of counsel ("IAC") because (5) counsel failed to assert Pink's right to a complete appellate record; and (6) the state court granted counsel's motion to withdraw after he filed an *Anders* brief. *See* Dkt. Nos. 3 & 4.

As characterized by the State, the first four claims "boil down to an allegation that [Pink] was denied the transcript of a [supposed January 23, 2014] pretrial hearing where a number of other constitutional violations allegedly took place." Dkt. No. 10 at 9. And the State argues that the IAC claims are derivative of those claims. *See id.*. at 13-14.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)"). And, in sum, "[t]he

question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under §

2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s]

the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, ___ F.3d ___, No. 17-50336, 2018 WL 6499509, at *1 (5th Cir. Dec. 11, 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the

doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

I.    Due Process

To the extent that Pink's first four claims concerning alleged procedural defects in his state direct appeal present claims under federal law, they sound in due process. *See, e.g., Caldwell v. Thaler*, 770 F. Supp. 2d 849, 864 (S.D. Tex. 2011) ("As the Supreme Court has held repeatedly, 'federal habeas corpus relief does not lie for errors of state law.' An error of state law 'does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause.' The Supreme Court has 'defined the category of infractions that violate "fundamental fairness" very narrowly.'" (citations omitted)). And the United States Court of Appeals for the Fifth Circuit has addressed in the habeas context a claim that an allegedly incomplete trial transcript deprived a petitioner of meaningful appellate review and thus denied him due process:

> "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Accordingly, "if a

State has created appellate courts as 'an integral part of the ... system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (alteration in original) (citation omitted) (quoting *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)). However, "a complete verbatim transcript" is not always required to ensure that a defendant's right to meaningful appellate review is satisfied. *See Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir. 1980) ("[T]he state is not obligated to automatically supply a complete verbatim transcript."). Accordingly, the record is "adequate for full appellate review" so long as it contains the portions necessary to address the alleged errors below. *Schwander v. Blackburn*, 750 F.2d 494, 497-98 (5th Cir. 1985) (quoting *State v. Francis*, 345 So.2d 1120, 1125 (La. 1977)). Moreover, claims based on incomplete transcripts must show that "the absence of such a transcript prejudiced [the defendant's] appeal." *Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987).

*Higginbotham v. Louisiana*, 817 F.3d 217, 222 (5th Cir. 2016).

Pink fails to show that a due process violation occurred as to an allegedly missing January 23, 2014 pretrial hearing – or that the CCA's denial of his due process claims was unreasonable.

First, the record – developed after an investigation by Pink's appellate counsel and the State – reflects that no hearing occurred on that date. *See* Dkt. No. 10-1, Ex. C (March 28, 2015 letter from appellate counsel to the Dallas Court of Appeals – in response to Pink's *pro se* motion requesting a hearing on the allegedly lost transcript – documenting counsel's search for proof of a pretrial hearing between January 17 and 27, 2014, setting out that the trial court's docket sheet did not reflect that a hearing occurred and that the trial judge, the court report, and Pink's trial counsel all told appellate counsel that no hearing occurred); *id.*, Ex. D (March 30, 2015 letter from the appellate chief at the Dallas County District Attorney's Office – responding to the same

*pro se* motion – documenting that office's similarly unsuccessful search for an applicable hearing during January 2014).

Second, Pink has not established that, if a hearing did occur as he alleges, there is a basis to believe that the failure to transcribe that hearing amounts to a constitutional violation. *See, e.g., Benton v. Davis*, No. 2:16-cv-15-D, 2018 WL 6111512, at *12 (N.D. Tex. Sept. 11, 2018) ("Although the reporter's failure to transcribe the reading of the charge is possible error [under the Texas Code of Criminal Procedure], the error is not a constitutional violation subject to remedy by this Court." (citing *Brossette v. State*, 99 S.W.3d 277, 285-86 (Tex. App. – Texarkana 2003, pet. ref'd))), *rec. adopted*, 2018 WL 6087699 (N.D. Tex. Nov. 21, 2018).

And, finally – again accepting that a hearing occurred – Pink fails to show how the absence of a transcript of the alleged January 2014 hearing prejudiced his appeal. *Compare* Dkt. No. 10-1, Ex. C (appellate counsel's letter, recounting Pink's subsequent, June 2014 sentencing, at which Pink pleaded guilty freely and voluntarily to the charges, the enhancement paragraphs, and the allegations in the motion to revoke and stated that he was satisfied with trial counsel's representation), *with* Dkt. No. 4 at 8 (asserting, without elaboration, that, based on what transpired at the alleged January 2014 hearing, Pink can bring claims of "involuntary guilty plea, denial of due process, ineffective assistance of counsel, abandonment of counsel, and intimidation by the court and numerous other constitutional and fundamental violations occurred"); *see also Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (per curiam) ("re-emphasiz[ing] that mere conclusory allegations do not raise a constitutional issue in a habeas

-10-

proceeding" (citation omitted)).

II.    Ineffective Assistance

The Court reviews IAC claims, whether directed at counsel during trial or on direct appeal, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See id.* at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

-11-

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been

established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by

*Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ____, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

Measured against these standards, the same reasons showing that the CCA's denial of Pink's due process claims was not unreasonable also show that the CCA's denial of his IAC claims does not amount "to an unreasonable application of *Strickland* or an unreasonable determination of the evidence," *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)).

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 21, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE